ANN BIRMINGHAM SCHEEL
ACTING UNITED STATES ATTORNEY
District of Arizona
CHARLES A. DAVIS
Assistant U.S. Attorney
Arizona State Bar No.  014386
405 W. Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone:  (520) 620-7300
charles.davis2@usdoj.gov

JOANNA K. BRINKMAN
U.S. Department of Justice, Trial Attorney
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 305-0476
joanna.brinkman@usdoj.gov
Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| City of Tombstone,<br><br>             Plaintiff,<br>        v.<br><br>United States of America, et al.,<br><br>             Defendants. | **CV 11-845-TUC-FRZ** |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**AND MEMORANDUM OF POINTS AND AUTHORITIES**

# **TABLE OF CONTENTS**

STATEMENT ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 2

I.      INTRODUCTION.................................................................................. 2

II.     FACTUAL BACKGROUND ................................................................. 4

        The Claimed Water Sources ............................................................. 5

        The 1962 Special Use Permit & Statements of Claim for Water Rights ............. 7

        Recent Authorizations for Specific Repairs ....................................... 8

III.    STANDARDS OF REVIEW ................................................................. 8

        A.      Federal Rule of Civil Procedure 12(b)(1) ................................ 8

        B.      Federal Rule of Civil Procedure 12(b)(6) ................................ 9

IV.     ARGUMENT....................................................................................... 10

        A.      This Court Has No Jurisdiction Over Counts I, II, III, or V Because the Claims are Not Ripe ....................................... 10

        B.      Counts I, II, and III of the City's Complaint Fail to State Cognizable Claims Under the APA............................................. 11

                1.      The City has failed to exhaust administrative remedies. ................................................................. 11

                2.      Counts I, II, and III fail to identify any final agency action ............................................................... 14

                3.      Count II fails as a matter of law........................ 16

                4.      Count III lacks supporting factual allegations ................... 18

i

C.   Count IV of the City's Complaint Fails to State a Legitimate Claim

Under the Quiet Title Act .................................................................. 18

1.   Legal Background ................................................................ 18

2.   Count IV is barred by the statute of limitations ................. 20

3.   Count IV must be dismissed because the City

has failed to plead with the requisite particularity ............. 24

D.   Count V of the City's Complaint Cannot State a Valid Claim Under

the Tenth Amendment ...................................................................... 29

E.   This Court has no Jurisdiction Over Water Rights Claims .................... 32

F.   Tombstone Has Failed to State a Claim for Road Rights-of-Way .......... 34

G.   There is No Claim for Prescriptive Easements Against the

Untied States ................................................................................... 34

IV.   CONCLUSION ............................................................................................ 35

1

## TABLE OF AUTHORITIES

2

## CASES

3

4

*Amoco Prod. Co. v. United States*,
        619 F.2d 1383 (10th Cir. 1980) ........................................................ 21

5

6

*Balistreri v. Pacifica Police Dep't*,
        901 F.2d 696 (9th Cir. 1990) ............................................................. 9

7

8

*Bell Atlantic Corp. v. Twombly*,
        550 U.S. 544 (2007) .................................................................9, 18

9

10

*Bennett v. Spear*,
        520 U.S. 154 (1997) ...............................................................14, 15

11

12

*Block v. N.D. ex rel. Bd. Of Univ. and Sch. Lands*,
        461 U.S. 273 (1983) ...............................................................19, 24

13

*Bradley v. Schafer*,
        2010 WL 5105049 (D. Mont. 2010) ..........................................22, 23

14

15

*Buchler v. United States*,
        384 F. Supp 709 (E.D. Cal. 1974) .................................................... 25

16

17

*Cal. ex. rel. State Land Comm'n v. Yuba Goldfields, Inc.*,
        752 F.2d 393 (9th Cir. 1985) ........................................................... 21

18

19

*Capaccang v. U.S. Citizenship and Immigration Servs.*,
        627 F.3d 1313 (9th Cir. 2010) ........................................................ 14

20

21

*Case v. Bowles*,
        327 U.S. 92 (1946) ......................................................................... 29

22

23

*Chandler v. State Farm Mut. Auto Ins. Co.*,
        598 F.3d 1115 (9th Cir. 2010) ........................................................ 11

24

25

*City and County of Denver v. Bergland*,
        517 F. Supp. 155 (D. Colo. 1981), *aff'd in part, rev'd in part*,
        695 F.2d 465 (10th Cir. 1982) ........................................................ 25

26

27

*City of Baker City v. United States*,
        2011 U.S. Dist. LEXIS 105915 (D. Or. Sept. 18, 2011) .................................... 31

28

*Clouser v. Espy*,
        42 F.3d 1522 (9th Cir. 1994) .......................................................... 13

iii

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
        482 F.3d 1157 (9th Cir. 2007) ............................................................... 19

*Dalton Wilson*,
        156 IBLA 89 (2001) ................................................................................ 10

*Darby v. Cisneros*,
        509 U.S. 137 (1993) ............................................................................... 13

*Diamond Bar Cattle Co. v. United States*,
        168 F.3d 1209 (10th Cir. 1999) ............................................................. 28

*Elko County Bd. of Supervisors v. Glickman,*
        909 F. Supp. 759 (D. Nev. 1995) ..............................................2, 16, 17

*Federal Power Comm. v. State of Oregon*,
        349 U.S. 435 (1955) ............................................................................... 10

*Galbraith v. County of Santa Clara*,
        307 F.3d 1119 (9th Cir. 2002) ............................................................... 10

*Gen. Atomic Co. v. United Nuclear Corp.*,
        655 F.2d 968 (9th Cir. 1981) ................................................................... 8

*Goodman v. City of Tucson*,
        2009 WL 1066147 (D. Ariz. April 21, 2009)........................................ 11

*Greeley v. Von Trotha*,
        108 P. 985 (Colo. 1910) ........................................................................ 11

*Grindstone Butte Project v. Kleppe*,
        638 F.2d 100 (9th Cir. 1981) .......................................................2, 3, 17

*Hazel Green Ranch, LLC v. U.S. Dep't of Interior*,
        2010 WL 1342914 (E.D. Cal. April 5, 2010)  .................................... 25

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
        452 U.S. 264 (1981)............................................................................... 29

*Humboldt County v. United States*,
        684 F.2d 1276 (9th Cir. 1982) .............................................................. 19

*Idaho Sporting Cong., Inc. v. Rittenhouse*,
        305 F.3d 957 (9th Cir.2002) .................................................................. 11

iv

*Kleppe v. New Mexico*,
  426 U.S. 529 (1976) ........................................................................ 29

*Knapp v. United States*,
  636 F.2d  279 (10th Cir. 1980) ...................................................... 21

*Lyon v. Gila River Indian Cnty.*,
  626 F.3d 1059 (9th Cir. 2010) ....................................................... 34

*McBride Cotton and Cattle Corp. v. Veneman*,
  290 F.3d 973 (9th Cir. 2002) ......................................................... 11

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) ........................................................... 9

*McFarland v. Norton*,
  425 F.3d 724 (9th Cir. 2005) .....................................................21, 22

*Michel v. United States*,
  65 F.3d 130 (9th Cir. 1995) ......................................................21, 22

*Minnesota v. Block*,
  660 F.2d 1240 (8th Cir. 1981) ....................................................... 30

*Nevada v. United States*,
  731 F.2d 633 (9th Cir. 1984) .....................................................21, 23

*New York v. United States*,
  505 U.S. 144 (1992)..............................................................29, 31, 32

*Nuclear Energy Inst., Inc. v. Envtl. Prot. Agency*,
  373 F.3d 1251 (D.C. Cir. 2004) ..................................................... 31

*Park County, Mont. v. United States*,
  626 F.2d 718 (9th Cir. 1980) ......................................................... 21

*Pine River Irrigation Dist. v. U.S.*,
  656 F. Supp. 2d 1298 (D. Colo. 2009) .......................................... 22

*Printz v. United States*,
  521 U.S. 898 (1997) ...................................................................... 31

*Reno v. Condon*,
  528 U.S. 141 (2000) ...................................................................... 32

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ..................................................... 9

*Savage v. Glendale Union High School*,
  343 F.3d 1036 (9th Cir. 2003) ................................................ 8, 9

*School Bd. of Avoyelles Parish v. U.S. Dep't of Interior*,
  647 F.3d 570 (5th Cir. 2011) .................................................. 30

*Seattle Audubon v. Sutherland*,
  2007 WL 1300964 (W.D. Wash. May 1, 2007) ............................ 32

*Shultz v. Dep't of Army*,
  886 F.2d 1157 (9th Cir. 1989) ............................................. 21, 23

*South Carolina v. Baker*,
  485 U.S. 505 (1988) ............................................................ 32

*Southway v. Cent. Bank of Nigeria*,
  328 F.3d 1267 (10th Cir. 2003) ............................................... 9

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................... 9, 18

*State ex rel. Arizona State Land Dept. v. Robinson Cattle, LLC*,
  2011 WL 2695774 (Ariz. App. Div. 2 June 15, 2011) ................. 21, 28

*Stubbs v. United States*,
  620 F.2d 775 (10th Cir. 1980) ............................................. 19, 24

*Thompson v. McCombe*,
  99 F.3d 352 (9th Cir. 1996) .................................................... 8

*Tucson Consol. Copper Co. v. Reese*,
  100 P. 777 (Ariz. 1909) ........................................................ 34

*Tumacacori Mission Land Dev., Ltd. v. Union Pacific R. Co.*,
  263 P.3d 649 (Ariz. Ct. App. 2011) ........................................ 35

*United States v. 1,629.6 Acres of Land*,
  503 F.2d 764 (3d Cir. 1974) ............................................... 34, 35

*United States v. Beggerly*,
  524 U.S. 38 (1998) ............................................................. 21

*United States v. City and County of San Francisco*,
    310 U.S. 16 (1940)............................................................................29, 30

*United States v. Doremus*,
    888 F.2d 630 (9th Cir.1989) ..................................................... 17

*United States v. Jenks*,
    129 F.3d 1348 (10th Cir. 1997) ..............................................28, 30

*United States v. Jones*,
    231 F.3d 508 (9th Cir. 2000) ...................................................... 29

*United States v. Lindsey*,
    595 F.2d 5 (9th Cir. 1979) ........................................................ 30

*United States v. Mitchell*,
    445 U.S. 535 (1980)................................................................. 19

*United States v. Mottaz*,
    476 U.S. 834 (1986)............................................................19, 24

*United States v. Nordic Village, Inc.*,
    503 U.S. 30 (1992) .................................................................. 19

*United States v. Vasarajs*,
    908 F.2d 443 (9th Cir. 1990) ...................................................... 34

*United States v. Volger*,
    859 F.2d 638 (9th Cir. 1988) ...................................................... 30

*Vincent Murphy Chevrolet Co. v. United States*,
    766 F.2d 449 (10th Cir. 1985) .................................................... 21

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ....................................................... 9

*Washington County v. United States*,
    903 F. Supp. 40 (D. Utah 1995) ................................................. 25

*Werner v. United States*,
    9 F.3d 1514 (11th Cir. 1993) ...................................................... 22

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ...................................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## STATUTES

U.S. Const., art. IV, § 3, cl. 2 ........................................................... 29

7 U.S.C. § 6912(e) ..................................................................... 11, 13

16 U.S.C. § 551 ............................................................................ 12

28 U.S.C. § 2409a(a) ...................................................................... 19

28 U.S.C. § 2409a(d) .................................................................. 19, 24

28 U.S.C. § 2409a(g) .................................................................7, 18, 20

28 U.S.C. § 2409a(n) ..................................................................20, 34

43 U.S.C. § 661 .......................................................2, 10, 11, 21, 27, 28

43 U.S.C. § 932 ............................................................................ 34

Ariz. Rev. Stat. Ann. § 45-184 (2012) ................................................. 33

Ariz. Rev. Stat. Ann. § 45-254(F) (2012) .............................................. 33

## REGULATIONS

36 C.F.R. § 261.1b .....................................................................12, 17

36 C.F.R. § 261.9(a) ...................................................................... 17

36 C.F.R. § 261.10(a) .................................................................... 17

36 C.F.R. § 251 ............................................................................ 13

36 C.F.R. § 251.50........................................................................ 12

36 C.F.R. § 251.101.....................................................................12, 13

36 C.F.R. § 261.10 ........................................................................ 12

## RULES

Fed. R. Civ. P. 12(b)(1)................................................................2, 3, 8

Fed. R. Civ. P. 12(b)(6) ..............................................2, 3, 9, 18, 32, 34, 35

1

**MISCELLANEOUS**

2

Black's Law Dictionary, 9th ed. ................................................................. 28

3

R. Cunningham, W. Stoebuck & D. Whitman,
     The Law of Property ch. 8, § 8.7 (1984) ........................................... 34

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANN BIRMINGHAM SCHEEL
ACTING UNITED STATES ATTORNEY
District of Arizona
CHARLES A. DAVIS
Assistant U.S. Attorney
Arizona State Bar No.  014386
405 W. Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone:  (520) 620-7300
charles.davis2@usdoj.gov

JOANNA K. BRINKMAN
U.S. Department of Justice, Trial Attorney
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 305-0476
joanna.brinkman@usdoj.gov
Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| City of Tombstone, | CV 11-845-TUC-FRZ |
|        Plaintiff, | |
|    v. | |
| United States of America, et al., | |
|        Defendants. | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**AND MEMORANDUM OF POINTS AND AUTHORITIES**

1
2
3
4
5
6
7

Defendants United States of America, et al., ("Defendants") submit this motion to dismiss Plaintiff's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   Defendants' motion is supported by the accompanying memorandum of points and authorities.   For the reasons stated in Defendants' memorandum, Plaintiff's amended complaint should be dismissed for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

8

## MEMORANDUM OF POINTS AND AUTHORITIES

9

## I.    INTRODUCTION

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The City of Tombstone's amended complaint must be dismissed in its entirety. The City's entire 66-page amended complaint is rooted in a fundamentally flawed premise: that the Forest Service has no authority to regulate Tombstone's uses of federal land because Tombstone has alleged "vested rights" that absolve it of compliance with any federal law or regulation.   What Tombstone ignores is that its alleged "vested rights"—to the extent they exist—are rights of use in *federally owned land* that derive solely from authority granted by Congress.   Congress in turn "has delegated to the Secretary of Agriculture the authority to make 'rules and regulations' (violation of which is a criminal offense) regarding the occupancy and use of the national forests." *Elko County Bd. of Supervisors v. Glickman*, 909 F. Supp. 759, 764 (D. Nev. 1995).   "That authority is considerable, and includes the right to reasonably regulate the exercise of vested water rights and accompanying rights-of-way obtained under 43 U.S.C. § 661, where such rights and rights-of-way lie within a national forest." *Id.*; *see also Grindstone Butte Project v. Kleppe*, 638 F.2d 100, 103 (9th Cir. 1981)

27
28

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(rights under the Act of March 3, 1891, like rights under the 1866 Act, are subject to reasonable regulation).

Ignoring that the central premise of its claim has been repeatedly rejected by the courts of this Circuit, the City alleges five claims for relief in its amended complaint. Each one suffers from either a jurisdictional or a pleading defect requiring dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, the City's Administrative Procedure Act ("APA") and Tenth Amendment claims are not yet ripe for adjudication, and therefore must be dismissed for lack of jurisdiction. In addition, Tombstone fails to state a claim upon which relief can be granted for both of these claims. Tombstone has not identified a final agency action subject to challenge under the APA, and the United States is engaged in a valid exercise of its own constitutional power by enforcing federal law for the protection of the federally-owned and managed Coronado National Forest and the Miller Peak Wilderness Area.

Next, concerning the Quiet Title Act ("QTA"), the City's claim must be dismissed for failure to plead with the required particularity. Tombstone's amended complaint is vague on the specific location of each claimed right, incomplete on the history of the City's actual use of the claimed rights and installation or maintenance of the alleged pipelines for each claim, and confusing concerning the nature of the alleged property interests. As this Court has previously recognized, the Forest Service has engaged in repeated attempts to confirm the location of the City's claims on federal land, but has been unable to locate many of the claims due to the lack of specificity in the City's pleading and supporting factual documents. Moreover, even if the pleading did comply with the QTA's strict pleading requirements, Tombstone's claims as to five springs are

barred by the QTA's 12-year statute of limitations by virtue of the restrictive terms of the 1962 special use permit.

To the extent the City claims the existence of "public highways" across federal land, it has failed to state a claim upon which relief can be granted because the 1866 law relied upon by Tombstone does not confer any rights to the establishment of public highways.   Concerning any supposed "water rights" claims, as opposed to claims of ownership in land, the court has already rightfully acknowledged that it lacks jurisdiction.   Finally, the Court also lacks jurisdiction for any claims based on prescriptive easements. For all these reasons, the Court must dismiss Tombstone's amended complaint.

## II.   FACTUAL BACKGROUND

The facts of this case have already been covered in fairly exhaustive detail at this stage through the preliminary injunction proceedings.   Dkt. Nos. 50; 54 (Pl.'s Statement of Facts; Defs.' Response and Controverting Statement of Facts ("RSOF" and "CSOF" respectively)).   Nonetheless, the relevant facts for purposes of this motion are summarized briefly below.   In this case, the City of Tombstone claims various ownership interests in multiple parcels of land, and springs, reservoirs, and water pipelines allegedly located on those lands, within the Coronado National Forest and the Miller Peak Wilderness Area.   Tombstone asserts three basic legal theories in attempting to support its five claims: 1) three separate claims under the APA; (2) one claim pursuant to the QTA; and (3) one claim alleging a violation of the Tenth Amendment to the United States Constitution.   *See* Dkt. No. 47, Pl.'s Am. Compl. ("Am. Compl.").   Ultimately, Tombstone seeks to enjoin the United States from interfering with

4

1  any of its attempts to conduct ground-disturbing work within the National Forest and

2  Wilderness.  *Id.* at 64-66.

3  **The Claimed Water Sources**:

4        In total, Tombstone seeks to quiet title to 25 separate spring sites and pipeline

5  rights-of-way to access those sites.   The following table summarizes all 25 claimed

6

7  sites:

| Spring Name | Covered By Special Use Permit? | Within Miller Peak Wilderness Area?[1] | Existing Water Facilities? | Statement of Claim and Statement of Claimant Filed With State of Arizona? | General Location |
|---|---|---|---|---|---|
| Miller Spring (No. 1) | Yes | Yes | Yes | Yes | Miller Canyon |
| McCoy Springs Group (Nos. 2, 3, 4) | No | Unknown | Unknown | No | Miller Canyon |
| Marshall Spring (No. 5) | No | Yes | Unknown | No | Marshall Canyon |
| Bench Spring (No. 6) | No | Yes | Unknown | No | Marshall Canyon |
| Maple Springs Group (Nos. 7, 8, 9) | No | Yes | Unknown | No | Marshall Canyon |
| Gird Reservoir (No. 9 ½) | No | No | Unknown | No | Marshall Canyon |
| Lower Spring (No. 10) | No | Yes | Unknown | No | Marshall Canyon |
| Clark Spring (No. 11) | Yes | No | Yes | Yes | Divide |
| Brearley Spring (No. 12) | Yes | No | Yes | No | Divide |
| Carr Spring (No. 13) | Yes | Yes | Yes | Yes | Carr Canyon |
| Cabin Spring (No. 14) | No | Unknown | Unknown | No | Carr Canyon |

---

[1] Spring Nos. 14, 15, and 17 through 21 have not been located on the ground.  Based on the representations in the 1901 sketch map, these springs appear to be located outside the Miller Peak Wilderness Area.  Because the main pipeline to Carr (Head) Spring is located within the wilderness area, any pipelines from these seven springs to be connected to the main pipeline would have to be constructed across wilderness. However, until Spring Nos. 14, 15, and 17 through 21 are located, the Forest Service cannot definitively determine whether the springs are located in wilderness.

5

| | | | | | |
|---|---|---|---|---|---|
| Cabin Auxiliary (No. 15) | No | Unknown | Unknown | No | Carr Canyon |
| Rock Spring (No. 16) | Yes | Yes (pipeline only) | Yes | Yes | Carr Canyon |
| Rock Auxiliary (No. 17) | Unknown | Unknown | Unknown | No | Carr Canyon |
| Smith Spring (No. 18) | Unknown | Unknown | Unknown | No | Carr Canyon |
| Porter Spring (No. 19) | No | Unknown | Unknown | No | Carr Canyon |
| O'Brien Spring (No. 20) | No | Unknown | Unknown | No | Carr Canyon |
| Storrs Spring (No. 21) | No | Unknown | Unknown | No | Carr Canyon |
| Quartz Spring (No. 22) | No | Yes | Unknown | No | Miller Canyon |
| Hoagland Spring (No. 23) | No | No | Unknown | No | Divide |
| Gardner Spring (No. 24) | Yes | Yes | Yes | Yes | Miller Canyon |

*See* Dkt. No. 54, CSOF ¶¶ 4-6; 34-39; 71. The United States Forest Service has attempted to locate, on the ground, each of Tombstone's 25 claims based on the information provided in its amended complaint and attached exhibits. However, due to the lack of specificity in the pleading and attached documents (including hand drawn maps and general descriptions but no surveys performed by an Arizona Registered Land Surveyor), the Forest Service has been unable to locate 19 of the 25 claims on the ground. *Id.* CSOF ¶¶ 34-37; 39; 44; 72-73. Moreover, the Forest Service has been unable to confirm whether certain of the sources now claimed by Tombstone may conflict with claims made previously by other private parties.[2]  *Id.* CSOF ¶¶ 36-37.

---

[2] A conflict may exist between Tombstone's claimed rights for certain water springs and the rights asserted by various private parties, particularly with respect to the Maple Group of springs (Nos. 7, 8, and 9). *Id.* CSOF ¶¶ 36-37. Without Tombstone providing an accurate land survey performed by an Arizona Registered Land Surveyor, the

**The 1962 Special Use Permit & Statements of Claim for Water Rights**:

The Forest Service issued a Special Use Permit to Tombstone in 1962 which applies to only six water sources at five of the 25 claimed springs.  *Id.* CSOF ¶¶ 4-6; RSOF ¶ 83, McKay Decl. Ex. 17.   At the time of its application, Tombstone only identified and applied for a special use permit for six water sources in the Huachuca Mountains.  Am. Compl. Ex. 58 at 9.  Under the permit's terms, the Forest Service has the right to terminate the permit, and the Forest Service must authorize any new construction, reconstruction, alteration of improvements, or plans in advance and in writing.  Dkt. No. 54, RSOF ¶ 83, McKay Decl. Ex. 17.  The permit does not grant an unfettered right of construction for new facilities or improvement to existing facilities. *Id.*

Tombstone similarly only identified five water sources located in the Huachuca Mountains when it filed its Statement of Claim and Statement of Claimant back in 1979 with the Water Rights Claim Registry of the Arizona State Land Department, and in state court proceedings to determine the relative rights of the water users of the San Pedro River and its tributary watersheds.  *Id.* CSOF ¶ 71.  When asked to name "all other sources of water supply not described in Question 6 of the form," Tombstone responded that, in addition to Gardiner [sic] Spring, it claimed only "[f]our other springs & 3 deep wells."  *Id.*, McKay Decl. Ex. 20 at 2.

Forest Service has been unable to determine whether Tombstone's claims conflict with the rights asserted by these other private parties.  Should such a conflict exist, and there is evidence of Tombstone's awareness of such a conflict for over twelve years prior to filing this action, then this may provide another trigger for the 12-year statute of limitations for these, and potentially other, claims.  28 U.S.C. § 2409a(g).  The United States preserves all rights to assert such statute of limitation defenses, as well as failure to join a necessary party as to these other interested private claimants, based upon further factual development.

1

**Recent Authorizations for Specific Repairs**:

2

3

As for the work that Tombstone has sought to perform at the springs for which

4

the locations are known and where water facilities actually existed prior to the 2011

5

Monument Fire and mudslides (and which were also covered by the 1962 Special Use

6

Permit), the Forest Service has issued various decision memoranda authorizing

7

Tombstone to conduct certain repairs, including using motorized or mechanical means.

8

*Id.* CSOF ¶¶ 15; 23-24; 41-42.   Beyond these initial instances of cooperation, where

9

Tombstone provided sufficiently detailed information such that the Forest Service was

10

able to issue the necessary authorizations, Tombstone has refused to provide further

11

site specific information such that additional repair work may be authorized.   *See id.*

12

CSOF ¶¶ 21-22; 28-29; 32.

13

14  **III.     STANDARDS OF REVIEW**

15            **A.     Federal Rule of Civil Procedure 12(b)(1)**

16

17

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of

18

an action for "lack of subject matter jurisdiction."   Faced with a Rule 12(b)(1) motion, a

19

plaintiff bears the burden of proving the existence of the court's subject matter

20

jurisdiction.  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).   A federal court

21

is presumed to lack jurisdiction in a particular case unless the contrary affirmatively

22

appears.   *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir.

23

1981).   A challenge to subject matter jurisdiction may be facial or factual.   *White v. Lee*,

24

227 F.3d 1214, 1242 (9th Cir. 2000).   In resolving a factual attack on jurisdiction, the

25

district court may review evidence beyond the complaint without converting the motion

26

to dismiss into a motion for summary judgment.   *Savage v. Glendale Union High*

27

28

8

*School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).   When jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of producing evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence.  *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

### B.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).   In addition, a complaint that fails to provide the grounds for the requested relief beyond labels and conclusions will not survive a motion challenging the sufficiency of a complaint's statement of the claim for relief under Fed. R. Civ. P. 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.")

Where a plaintiff fails to assert a cognizable legal theory in support of a claim, the claim must be dismissed.  Moreover, while the plaintiffs' material factual allegations are assumed to be true, district courts may not assume the truth of legal conclusions "merely because they are cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).   A court may consider material properly submitted as part of the complaint on a motion to dismiss without converting the motion

9

1

2

to dismiss into a motion for summary judgment.  *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

3

## IV.    ARGUMENT

4

5

### A.    This Court Has No Jurisdiction Over Counts I, II, III or V Because the Claims Are Not Ripe

6

7

8

9

10

11

12

13

14

15

16

17

18

Tombstone's APA and Tenth Amendment claims are not ripe for adjudication because these claims are based on the yet-uncertain outcome of its QTA claim.  In order for Tombstone to bring its APA and Tenth Amendment claims, it must first establish that it holds all the rights that it claims in this quiet title action.  *See, e.g.*, Am. Compl. ¶ 83 (arguing in Claim One that "refusal to recognize and grant Tombstone the access it has requested to maintain, repair and restore its municipal water system violates . . . Tombstone's underlying vested rights"); *id.* ¶ 105 (arguing in Claim Two that denial of access to its "existing rights" constituted final agency action); *id.* ¶ 122 (arguing in Claim Three that refusal to grant Tombstone access to its "valid existing rights" violates the Wilderness Act); *id.* ¶ 139 (arguing in Claim Five that regulatory interference with Tombstone's "vested rights" violates the Tenth Amendment).

19

20

21

22

23

24

25

26

27

28

Tombstone has not yet proven in this Court or any other that it holds the title or scope of rights claimed to any of its 25 water sources, including for any easements, rights-of-way, or fee simple title to land.  Without first adjudicating whether and to what extent the claimed rights exist, Tombstone cannot assert a ripe challenge pursuant to the APA or Tenth Amendment claim for any alleged interference with those claimed rights.  *See, e.g., Fed. Power Comm'n v. Oregon*, 349 U.S. 435, 446-48 (1955) (43 U.S.C. § 661 does not apply to appropriations made after reservation of public land); *Dalton Wilson*, 156 IBLA 89, 97-98 (2001) (rights-of-way under 43 U.S.C. § 661 are

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

limited to the extent facilities were actually constructed and maintained, and may be abandoned); *Greeley v. Von Trotha*, 108 P. 985 (Colo. 1910) (finding that 43 U.S.C. § 661 does not confer a right to construct a new or changed dam).  This Court does not have jurisdiction to consider Tombstone's unripe claims. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss"); *see also Goodman v. City of Tucson*, No. CV-07-609-TUC-CKJ, 2009 WL 1066147, at *6 (D. Ariz. Apr. 21, 2009) (finding claim unripe because a final decision regarding the plaintiff's "vested rights" had not yet been made).  Accordingly, Tombstone's first, second, third, and fifth claims for relief must be dismissed for lack of jurisdiction.

**B.    Counts I, II, and III of the City's Complaint Fail to State Cognizable Claims Under the APA**

**1.    The City has failed to exhaust administrative remedies.**

The Department of Agriculture Reorganization Act states that "a person shall exhaust all administrative appeal procedures . . . before the person may bring an action in a court of competent jurisdiction against [inter alia, the Forest Service]."  7 U.S.C. § 6912(e) (emphasis added).    While the Ninth Circuit has held that this statutory requirement is not jurisdictional, it is still a prerequisite to Plaintiff seeking judicial review of an agency action.  *McBride Cotton and Cattle Corp. v. Veneman* 290 F.3d 973, 980 (9th Cir. 2002).  Exhaustion of administrative remedies, for any issue, means the issue has to be raised on administrative appeal "with sufficient clarity to allow the decision maker to understand and rule on the issue raised."  *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir.2002).

11

1

2       Forest Service regulations govern all uses of National Forest System lands and

3   unequivocally state that "*all uses* of National Forest System lands, improvements, and

4   resources, except [uses related to sharing and use of roads; grazing and livestock use;

5   sale and disposal of timber and special forest products; minerals], are designated

6   'special uses.'"  36 C.F.R. § 251.50(a).  A user must obtain a special use authorization

7   before undertaking special uses under the regulations.  *Id.*  The regulations explicitly

8   prohibit "[c]onstructing, placing, or maintaining any kind of road, trail, structure, fence,

9   enclosure, communication equipment, significant surface disturbance, or other

10  improvement on National Forest System lands or facilities without a special-use

11  authorization, contract, or approved operating plan when such authorization is

12  required."  36 C.F.R. § 261.10(a).  Any violation of these prohibitions is punishable by

13  criminal penalties, including fines and imprisonment.  36 C.F.R. § 261.1b; 16 U.S.C. §

14  551.  In short, users of National Forest lands who want to engage in special uses such

15  as maintenance or construction activities must seek authorization from the Forest

16  Service to do so.

17      If a user is denied the requested authorization, "any filing for Federal judicial

18  review of and relief from a decision appealable under this subpart is premature and

19  inappropriate, unless the appellant has first sought to resolve the dispute by invoking

20  and exhausting the procedures of this subpart."  36 C.F.R. § 251.101.  The exhaustion

21  requirement mandates that "an appeal to 'superior agency authority' is a prerequisite to

22  judicial review [under the APA] . . . when expressly required by statute or when an

23  agency rule requires appeal before review and the administrative action is made

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

inoperative pending that review." *Clouser v. Espy*, 42 F.3d 1522, 1532 (9th Cir. 1994) (quoting *Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993)).  Here, both the statute (7 U.S.C. §6912(e)) and the regulations (36 C.F.R. §251.101) expressly condition the right to judicial review on the proper exhaustion of administrative remedies.

Here, Tombstone claims that "[a]vailable administrative processes have been exhausted or pursuing them is futile."  Am. Compl. ¶ 82.  This claim is simply not true.  The City has not filed any appeal, pursuant to 36 C.F.R. § 251, of any decision issued by the Forest Service.  In fact, Tombstone has not even completed an application for any authorizations apart from the two that have already been granted by the Forest Service.  For every other activity the City wishes to conduct it has not even taken the initial step of actually seeking authorization and submitting the information necessary for the Forest Service to make a determination, let alone filed an appeal of any adverse determination.   All three of Tombstone's claims for relief under the APA must be dismissed for failure to exhaust administrative remedies because Tombstone has not properly sought an agency determination and definitely has not filed any administrative appeal whatsoever.

Moreover, Tombstone cannot invoke "futility" as a basis to avoid this exhaustion requirement.   Those specific requests for work authorizations properly submitted by Tombstone to repair its springs have been approved.  For the remaining work that Tombstone apparently wishes to conduct, it has not submitted the information necessary for the Forest Service to make a determination.  The fact that the Forest Service has actually approved Tombstone's prior requests for certain types of repairs using motorized equipment clearly demonstrates that such requests are not futile.

13

1  Accordingly, Tombstone has utterly failed to exhaust administrative remedies and its

2  three claims for relief under the APA must be dismissed.

3       **2.      Counts I, II, and III fail to identify any final agency action.**

4       In addition to lacking jurisdiction for these claims because they are not ripe,

5  Tombstone cannot identify a challengeable final agency action required to invoke this

6  Court's jurisdiction under the APA.  Two conditions must exist before an agency action

7  may be considered final agency action for purposes of judicial review.  "First, the action

8  must mark the 'consummation' of the agency's decisionmaking process . . . it must not

9  be of a merely tentative or interlocutory nature.  And second, the action must be one by

10 which 'rights or obligations have been determined,' or from which 'legal consequences

11 will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

12

13

14      As this Court has previously held, Tombstone has not identified a single

15 actionable final agency action as the basis for its APA claims.  *See* Order, Dkt. No. 58

16 at 8 ("Based on the Court's review of the record, there has been no final agency action

17 that is properly subject to judicial review."); *see also Cabaccang v. U.S. Citizenship and

18 Immigration Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010) (finding district court lacked

19 jurisdiction under the APA where agency action was not yet final).   The Forest

20 Service's decisionmaking has not been "consummated" in the context of its responses

21 to Tombstone's various work requests.  The Forest Service has authorized repairs for

22 which it received complete and specific information from Tombstone on the location,

23

24 nature and equipment for its intended repairs.  Order, Dkt. No. 58 at 8; Dkt. No. 54,

25 CSOF ¶¶ 15; 23-24; 41-42.  The Forest Service has repeatedly stated that it will

26 consider all work requests submitted by Tombstone which meet the requirement of

27

28

14

providing complete information on the scope and nature of the work to be performed, including requested equipment.  Dkt. No. 54, CSOF ¶¶ 22, 29.  To date, the Forest Service has not received this information from Tombstone for the total scope of work at each claimed spring location.  *Id.*  Tombstone hasn't even provided sufficient information to allow the Forest Service to locate the claimed springs on the ground.  *Id.* CSOF ¶¶ 35-37, 39, 44.  Due to the interlocutory nature of the ongoing work approval process, there has been no "final" agency action subject to review under the APA.  *See* Order, Dkt. No. 58 at 8 ("there certainly has been no consummation of the Defendants' decision making process").  Counts I, II, and III of the City's amended complaint must be dismissed on this basis alone.

Count I, moreover, also fails to satisfy the second requirement in *Bennett*, because this Court has also already recognized that the Forest Service has not imposed additional legal obligations or consequences on Tombstone beyond what has always been contained in the 1962 special use permit.  *Id.* at 8-10.[3]   Similar to its renewed motion for a preliminary injunction, Tombstone's amended complaint misrepresents the scope of its 1962 special use permit.  *Compare* Order, Dkt. No. 58 at 8-10; *with* Am. Compl. ¶ 80 (alleging that the terms of the 1962 permit fully allow Tombstone the access it seeks, which includes construction of new facilities in wilderness and use of heavy machinery); *and with* Dkt. No. 54 RSOF ¶ 83, McKay Decl. Ex. 17 at 1-2 (containing restrictive terms, including right to terminate permit and require further written approvals).

---

[3] In addition, this Court has rejected Tombstone's attempt to base any claims on a supposed violation of agency guidelines, *see* Am. Compl. ¶ 115, acknowledging that Plaintiffs have no enforceable rights based on such guidelines.  Order, Dkt. No. 58 at 10 n.3.

In sum, the legal obligations and associated consequences from the special use permit have been in place since 1962, and the Forest Service has taken no further final agency action pursuant to this special use permit such that new or additional legal obligations or restrictions have been imposed.  For this independent reason, Count I of the City's amended complaint must be dismissed.

### 3.   Count II fails as a matter of law.

At its heart, Count II of the City's amended complaint alleges once again that the Forest Service is preempting the City's exercise of its "vested rights" because it will not allow Tombstone to use certain types of equipment in the repair and restoration of its claimed water lines.  Am. Compl. ¶ 88-92.  The fundamental problem with Tombstone's claim is that it ignores well settled law.  The Forest Service has the authority, and in fact the <u>duty</u>, to regulate and protect National Forest System lands even when users have rights of access to those lands.

The District Court in Nevada addressed an almost identical issue involving pipeline rights-of-way across public lands, and rejected the very same contention raised by Tombstone here.  *Elko County Bd. of Supervisors*, 909 F. Supp. at 764.  In that case, ranchers claimed "vested rights to water and to rights of way across land within the Humboldt National Forest" which had been granted under the Act of July 26, 1866 (the same statute invoked by Tombstone here), well before the National Forest had been established.  *Id.* at 763.  The ranchers sought unfettered access to maintain their pipelines, free of condition or limitation by the Forest Service.  *Id.*  That court, relying on Ninth Circuit precedent, concluded:

> though we assume that the ranchers have vested rights-of-way under §
> 661, and that vested rights are protected property interests, a vested

> right-of-way which runs across Forest Service lands is nevertheless subject to reasonable Forest Service regulation, where "reasonable" regulation is defined as regulation which neither prohibits the ranchers from exercising their vested rights nor limits their exercise of those rights so severely as to amount to a prohibition.

*Id.* at 764 (citing *United States v. Doremus*, 888 F.2d 630, 632 (9th Cir.1989)).  The Nevada court then went on to discuss the Forest Service's obligation under its regulations to approve any special uses on the lands under its jurisdiction, including special uses of constructing, placing, or maintaining any kind of structure.  *Id.* at 765 (citing 36 C.F.R. §§ 261.1b, 261.9(a), 261.10(a)).  In short, if the ranchers wished to enter Forest Service lands to maintain their claimed ditches, they had to get Forest Service permission to do so.  *Id.*

In a similar case, the Ninth Circuit recognized that agencies charged with regulating use of the public lands are in fact <u>obligated</u> to impose terms and conditions on their use:

> Because we hold that the Secretary is vested with statutory authority to impose reasonable terms and conditions upon grants of irrigation rights-of-way, it is clear that no provision in the 1891 or 1901 Acts precludes the Secretary from implementing NEPA's environmental mandate. As stated above, in exercising discretion to impose terms and conditions upon rights-of-way granted over federal lands, the Secretary <u>must comply</u> with NEPA's mandate to protect the environment. See Detroit Edison Co., 630 F.2d at 450, 451.

*Grindstone Butte Project*, 638 F.2d at 103 (emphasis added).  Thus, even assuming Tombstone had established its alleged "vested rights"– and it has not — the law is clear that the Forest Service would retain authority to regulate Tombstone's use of those rights.  Accordingly, Count II must be dismissed.

### 4.    Count III lacks supporting factual allegations.

Finally, to the extent Tombstone attempts to establish some sort of APA violation based upon the Wilderness Act, its factual allegations fail to state any claim. First, similar to the arguments above, Tombstone has not identified a challengeable final agency action for denied access.   Second, Tombstone never establishes what facilities actually exist on the ground even in present day, let alone what facilities existed on the ground at the time the Miller Park Wilderness Area was established. *See* Order, Dkt. No. 58 at 10 n.3 ("Plaintiff has not demonstrated what water infrastructure actually existed in the past and currently as to the 25 water sources (as opposed to the 6 covered by the SUP)").   At most, Tombstone has provided evidence of facilities that existed at the six water sources at the five springs covered by the 1962 special use permit.  *Id.*  Access to those springs is governed by the terms of the permit, and the Forest Service has engaged in a valid act of enforcing that permit.  Tombstone cannot state a claim based on a violation of the Wilderness Act where it has failed to identify which springs are impacted by the Wilderness Act, and whether and to what extent any facilities existed at those springs at the time of wilderness designation. Conclusory allegations are not sufficient to survive a Rule 12(b)(6) motion to dismiss. *See Bell Atlantic Corp.*, 550 U.S. at 555; *Sprewell*, 266 F.3d at 988.  As a result, Count III must be dismissed.

### C.    Count IV of the City's Complaint Fails to State a Legitimate Claim Under the Quiet Title Act

#### 1.    Legal Background

The Quiet Title Act ("QTA") provides a limited waiver of the United States' sovereign immunity in civil actions brought "to adjudicate a disputed title to real

property in which the United States claims an interest." 28 U.S.C. § 2409a(a).   The QTA is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property."   *Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 286 (1983).   As a statutory waiver of sovereign immunity, the QTA is to be strictly construed in favor of the United States.   *See id.* at 275-76; *Humboldt County v. United States*, 684 F.2d 1276, 1280 (9th Cir. 1982).   Absent an express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States.   *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).   "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."   *United States v. Mottaz*, 476 U.S. 834, 841 (1986).   A waiver of sovereign immunity by the United States must be expressed unequivocally.   *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

The QTA's waiver of sovereign immunity requires that a complaint brought under the statute "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States."   28 U.S.C. § 2409a(d).   Consistent with this limited waiver of sovereign immunity in the QTA, courts have instructed that the pleading requirements of the QTA must be strictly observed and exceptions are not to be implied.   *See Mottaz*, 476 U.S. at 841; *Stubbs v. United States*, 620 F.2d 775, 779 (10th Cir. 1980).   As a result, where a complaint is based upon conclusory allegations rather than specific averments regarding the basis of a

1
2

claim, the complaint should be dismissed. The QTA also limits its waiver of sovereign

immunity to actions commenced within 12 years of the accrual of the action:

3
4
5
6

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued.   Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

7
8

28 U.S.C. § 2409a(g).  Finally, the QTA prohibits suits against the United States based

on adverse possession.  *Id.* at § 2409a(n).

9

### 2.   Count IV is barred by the statute of limitations.

10
11
12

The Court lacks subject matter jurisdiction over Tombstone's claims for rights of

unfettered access to Miller, Carr, Gardner, Rock and Clark springs for any construction,

13

reconstruction, or improvements it deems appropriate because Tombstone failed to

14
15

bring these claims within the QTA's 12 year statute of limitations.  By virtue of the

Special Use Permit granted to Tombstone nearly 50 years ago, which  explicitly limited

16
17

Tombstone's access to the six water sources at these five springs and associated

pipelines, and reserved the right to terminate the permit and deny Tombstone's access

18
19

to its claimed rights, Tombstone "knew or should have known" that the United States

asserted an interest adverse to the rights now claimed by Tombstone to the six water

20
21

sources at these five springs.

22
23

For most claims, in determining "the date the plaintiff or his predecessor in

interest knew or should have known of the claim of the United States," 28 U.S.C. §

24
25

2409a(g), the courts utilize a reasonableness test.  "The question is whether the United

26

States' action would have alerted a reasonable landowner that the government claimed

27
28

an interest in the land."  *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989).[4]

"All that is necessary is a reasonable awareness that the Government claims some

interest adverse to the plaintiff's."  *Knapp v. United States*, 636 F.2d  279, 283 (10th

Cir. 1980); *see also Cal. ex. rel. State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d

393, 397 (9th Cir. 1985); *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1388 (10th

Cir. 1980); *Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449, 452 (10th

Cir. 1985); *Park County, Mont. v. United States*, 626 F.2d 718, 721 n.6 (9th Cir. 1980).

Moreover, "[t]he existence of one uncontroverted instance of notice suffices to trigger

the limitations period."  *Nevada v. United States*, 731 F.2d 633, 635 (9th Cir. 1984);

*see also Park County*, 626 F.2d at 721 (single sign constitutes adequate notice).  The

statute of limitations cannot be tolled for claims against the United States.  *See United*

*States v. Beggerly*, 524 U.S. 38, 48 (1998).

      The reasonable awareness standard is met when the plaintiff has any reason to

understand that the United States claims an interest adverse to plaintiff's claimed

interest.  Accrual of a cause of action under the QTA does not require that the United

States' claim be communicated in clear and unambiguous language.  *Yuba Goldfields*,

752 F.2d at 396 ("Constructive notice of recorded deeds may commence the running of

the limitations period.").   A plaintiff's cause of action for an easement across

government land accrues when the government, adversely to the plaintiff's interest,

---

[4] To the extent Tombstone is claiming fee simple title to certain lands within the National Forest, the standard for accrual of the statute of limitations for those claims would be further refined to where "notice of a government claim that create[d] even a cloud on the title may be sufficient to trigger the limitations period." *McFarland v. Norton*, 425 F.3d 724, 726 (9th Cir. 2005) (emphasis added).  However, Tombstone cannot assert fee simple ownership of land pursuant to 43 U.S.C. § 661.  *See State ex rel. Ariz. State Land Dep't v. Robinson Cattle, LLC*, No. 2 CA-CV 2010-0222, 2011 WL 2695774, at *2-3 (Ariz. Ct. App. June 15, 2011).

denies or limits the use of the alleged easement, *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995) (citing *Werner v. United States*, 9 F.3d 1514, 1516 (11th Cir. 1993)), or plaintiff otherwise has reason to understand that the government claims "the exclusive right to deny . . . access." *McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005), *aff'd*, 545 F.3d 1106 (9th Cir. 2008) (citation omitted).  Courts have repeatedly found that the restrictive language contained in Forest Service special use permits triggers the QTA's statute of limitations.  *See, e.g., Bradley v. Schafer*, No. CV 08-85-BU-RFC-JCL, 2010 WL 5105049, at *4-6 (D. Mont. Nov. 8, 2010); *Pine River Irrigation Dist. v. United States,* 656 F. Supp. 2d 1298, 1310-12 (D. Colo. 2009).

In accordance with the foregoing standards, the QTA's 12-year statute of limitations was triggered in this case by virtue of the 1962 Special Use Permit, which emphasized the United States' right to grant or deny access, and to limit that access, by virtue of the special use permit's restrictive terms.  *See Bradley,* 2010 WL 5105049 at **4-6 (QTA statute of limitations for claim of reservoir easement triggered where "the abandonment and termination provisions of the Plaintiffs' 1973 special use permit were sufficient to put them on notice that the United States claimed to have an interest adverse to that of an easement") *Pine River Irrigation Dist.,* 656 F. Supp. 2d at 1310-12. (QTA claim barred by statute of limitations where special use permit "effectively den[ied] the existence of a perpetual easement or right of way").

By the terms of the 1962 Special Use Permit for five springs (Miller, Carr, Gardner, Rock and Clark), the federal government claimed the exclusive right to revoke the permit and therefore deny access to Tombstone in a manner directly adverse to their claimed rights of unfettered access for any construction,

reconstruction, or improvements it deems appropriate.   Dkt. No. 54, RSOF ¶ 83, McKay Decl. Ex. 17 (1962 Special Use Permit) (stating "[t]his permit may be terminated upon breach of any of the conditions herein or at the discretion of the regional forester or the Chief, Forest Service"; "[t]his permit is revocable and nontransferable"; "[u]pon abandonment, termination, revocation, or cancellation of this permit, the permittee shall remove within a reasonable time all structures and improvements except those owned by the United States").   In addition, the permit made clear that the United States was not transferring any actual title to land or right to water use by virtue of issuing the permits.   *Id.* (stating "[t]his permit confers no rights upon the permittee to the use of the water involved.").   The permit also restricted Tombstone's access to the sites and required further authorizations and approvals from the Forest Service before the City could conduct any of the work it is now claiming an unfettered right to perform.   *Id.* (requiring construction to begin within 6 months and conclude within 14 months of the date of the permit; requiring further written authorization for any reconstruction or alteration of improvements).

Collectively or independently, these statements were sufficient to alert "a reasonable landowner that the government claimed an interest" in the lands to which Tombstone now claims an interest.   *Schultz*, 886 F.2d at 1160; *Nevada*, 731 F.2d at 635; *Bradley*, 2010 WL 5105049, at *4-6 (finding QTA statute of limitations triggered by identical language in a special use permit issued by the Forest Service).   Tombstone took no legal action to quiet its title or adjudicate its claimed water rights prior to 1974 despite its knowledge that the United States claimed the exclusive right to limit or deny access to the claimed water sources and lands by virtue of its power to revoke the

23

Special Use Permit, and by virtue of the restrictive terms and conditions.  The statute of limitations therefore began running at the latest by 1962 (if not sooner by virtue of earlier such permits), and expired no later than 1974 for Tombstone's claims.   *See Block*, 461 U.S. at 286 n.23.  Accordingly, Tombstone's claims to unfettered rights of access are barred by the QTA's 12-year statute of limitations.

**3.  Count IV must be dismissed because the City has failed to plead with the requisite particularity.**

The Court also lacks jurisdiction over Count IV because Tombstone's claims do not satisfy the QTA's prerequisite that the claims be plead with sufficient particularity.  Simply put, the parties cannot quiet title to claims that cannot presently be located on the ground.  As discussed previously, Tombstone's amended complaint and supporting exhibits lack the crucial, practical information concerning the location of each claimed spring and supposedly associated infrastructure required to invoke this Court's jurisdiction under the Quiet Title Act.   *See* Dkt. No. 53 at 1.  Among the several conditions placed on the United States' waiver of sovereign immunity in the QTA is the requirement that

> [t]he complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a(d).

Consistent with the limited waiver of sovereign immunity in the QTA, the requirements of the QTA "must be strictly observed and exceptions thereto are not to be implied."  *Stubbs*, 620 F.2d at 779; *accord Mottaz*, 476 U.S. at 841.  As a result, where a complaint is based upon conclusory allegations rather than specific averments

24

regarding the basis of a claim, the complaint should be dismissed.  In keeping with this rule, the court in *Washington County v. United States* dismissed several claims to rights-of-way, in part, on the grounds that the complaint did not allege with particularity the interests claimed or the circumstances under which the interests were acquired. 903 F. Supp. 40 (D. Utah 1995).  As the court reasoned

> Plaintiff alleges that it is "the owner of the highway rights-of-way shown" on the map attached to its complaint and that it "acquired its rights-of-way through public use, by County construction and maintenance of the rights-of-way or both."  The court agrees with the United States that these conclusory allegations do not identify "with particularity" any interest in real property; nor, do they  . . .  describe "the circumstances under which" any property interest was acquired.  Accordingly, as an additional basis for dismissing plaintiff's complaint, the court concludes that plaintiff has failed to comply with the conditions and requirements of 28 U.S.C. § 2409a by which the United States consents to suit in quiet title actions.

*Id.* at 42; *see also Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-cv-00414-OWW SMS, 2010 WL 1342914 at *6 (E.D. Cal. April 5, 2010) (dismissing claims and stating "the plain language of the QTA requiring particularity in description of the claimed real property interest supports the principle that a complaint that describes the claimed interest in real property in a confusing and contradictory manner is insufficient"); *Buchler v. United States*, 384 F. Supp 709, 711 (E.D. Cal. 1974); *City and County of Denver v. Bergland*, 517 F. Supp. 155, 175 (D. Colo. 1981), *aff'd in part, rev'd in part*, 695 F.2d 465 (10th Cir. 1982).  Thus, the language of the QTA and its judicial interpretations make clear that the United States has not waived its sovereign immunity for quiet title suits based on general, conclusory allegations concerning the basis of a plaintiff's claims.  Where a complaint suffers from such defects, there is no waiver of the United States' sovereign immunity under the QTA, and the court is without jurisdiction.

Tombstone's amended complaint fails to satisfy this basic condition to the waiver of the United States' sovereign immunity under the QTA. The complaint is vague on the specific location of each claimed right, incomplete on the history of the City's actual use of the claimed rights and installation or maintenance of the alleged pipelines for each claim, and confusing concerning the nature of the property interest claimed by Tombstone. The City cannot lump all of its 25 claims together so as to create the fundamentally erroneous impression that the history of use, maintenance or access to one claimed spring can also apply to all others. Tombstone must prove its rights to each individual claimed spring, and each on its own merits.

While Tombstone has included the original notices of appropriation and quit claim deeds with its amended complaint, these documents are not sufficient to establish where the various claims are located on the ground. For example, the description provided in the transcribed notices relies for their legal descriptions upon the location of the notice at the time it was posted.[5]   *See, e.g.*, Am. Compl. Ex. 32 ("The Huachuca Water Company . . . appropriated by actual use and development all of the waters of the Cabin <No.14> spring, at which this notice is posted"; "Beginning at this monument, where this notice is posted 200 feet in a S.W. direction from said Cabin (No. 14) Spring . . . ."). Such a description is not adequate in order to determine the actual present-day location of these claims on the ground. The proper procedure would be for Tombstone to perform an adequate land survey of the relevant lands and, if warranted, return to court with the necessary specific location information on a record of survey plat(s).

---

[5] The United States reserves all objections to the authenticity of the various exhibits attached to Tombstone's amended complaint.

26

As an additional and related defect, Tombstone has failed to provide any information relating to the circumstances surrounding the actual use of the water sources, or construction and maintenance of the alleged pipelines for each of the 25 claimed water sources.  *See* Order, Dkt. No. 58 at 10 n.3.  Far from providing any specificity or particularity on the extent or physical location of the claimed sources and pipelines, the City instead provides tedious detail quoting from the legal documents for each claim, but no practical information on the present location or use of any such facilities.  *See* Am. Compl. ¶¶ 13-24.  Based on the City's bare allegations concerning construction of the pipeline and imprecise maps and descriptions provided, it is impossible to discern where the claimed rights-of-way are actually located on the ground, and whether and to what extent the claimed pipelines have been used or maintained since 1881.  Tombstone should, at a minimum, provide an accurate land survey and resulting record of survey plat to demonstrate where, on the ground, all of its claimed interests specifically exist.  Hand drawn maps and property descriptions which fail to provide this specific information are insufficient to satisfy the QTA's requirement that claims be plead with sufficient particularity such that the Defendant has a fair opportunity to assess and defend against the claim.  Finally, the complaint is vague and confusing on the exact nature of the property rights claimed by Tombstone. Various allegations appear to potentially assert fee simple interests. *See* Am. Compl. ¶¶ 13, 19 (alleging that Tombstone's predecessor's in interest received interests in "five acre mill sites" and claiming "possession" of five-acre parcels for nearly all 25 springs). However, the basis for this fee simple ownership is unclear from the documentation and lack of legal support.  The Act of 1866 (43 U.S.C. § 661) did not convey fee simple

ownership of land.  It is well established that, concerning a statutory grant of an interest in Federal property, "nothing passes by implication, and unless the grant is explicit with regard to the property conveyed, a construction will be adopted which favors the sovereign." *United States v. Jenks*, 129 F.3d 1348, 1354 (10th Cir. 1997).  The rights acknowledged in 43 U.S.C. § 661 are limited to water rights and ditch rights-of-way and cannot be stretched to encompass the extraordinary claim that it also grants fee simple title in federal lands.  43 U.S.C. § 661; *see Diamond Bar Cattle Co. v. United States*, 168 F.3d 1209, 1215 (10th Cir. 1999); *Robinson Cattle LLC*, 2011 WL 2695774 at *2. If Tombstone believes it somehow holds fee simple ownership to five-acre parcels of land within the National Forest, then the factual and legal bases for those claims have not been pleaded with any particularity so as to permit Defendants a reasonable opportunity to respond.[6]

---

[6] In addition, to the extent Tombstone places great reliance on the existence of quitclaim deeds to demonstrate its claimed title, this reliance is misplaced.  A quitclaim deed is "[a] deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid."  Black's Law Dictionary, 9th ed ("A quitclaim deed purports to convey only the grantor's present interest in the land, if any, rather than the land itself.  Since such a deed purports to convey whatever interest the grantor has at the time, its use excludes any implication that he has good title, or any title at all.").  A quitclaim deed may pass title, or it may not.  Further evidence of the chain of title is necessary to determine what title, if any, is held by the grantee.

**D.      Count V of the City's Complaint Cannot State a Valid Claim Under the Tenth Amendment**

Tombstone's Tenth Amendment claims fails to state a claim upon which relief can be granted.[7]   It is well settled "that the Tenth Amendment 'does not operate as a limitation upon the powers, express or implied, delegated to the national government.'" *Case v. Bowles*, 327 U.S. 92, 102 (1946) (citation omitted); *accord New York v. United States*, 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress."); *United States v. Jones*, 231 F.3d 508, 515 (9th Cir. 2000) ("We have held that if Congress acts under one of its enumerated powers, there can be no violation of the Tenth Amendment); *see also Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981) ("The Court long ago rejected the suggestion that Congress invades areas reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces the States' exercise of their police powers.").

The Property Clause of the Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const., art. IV, § 3, cl. 2.   This power over the public lands has been interpreted broadly and is essentially "without limitations."   *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) (citing *United*

---

[7] In addition to failing to state a claim upon which relief can be granted, the City's Tenth Amendment claim fails on jurisdictional grounds because it is not ripe, as is explained in detail in Section IV.A., above.

*States v. City and County of San Francisco*, 310 U.S. 16, 29 (1940)).  Although the federal government does not have exclusive jurisdiction over its public lands within a state, and the state can enforce its criminal and civil laws there, "where those state laws conflict with . . . legislation passed pursuant to the Property Clause, the law is clear: The state laws must recede."  *Id.* at 543 (citation omitted).[8]

Here, the federal government has acted under the authority conferred by the Property Clause of the United States Constitution.  This comports with the well-settled principle that the federal government retains its own traditional police power, pursuant to the Property Clause, to subject claimants and easement holders to reasonable regulation in their use of Federal property.  *See United States v. Volger*, 859 F.2d 638, 640-42 (9th Cir. 1988) (acknowledging Congress's power under the Property Clause is "extensive" and holding that U.S. Park Service regulations did not deprive a claimant of access to his mining claims, but "simply required that [plaintiff] apply for a permit to transport his offroad vehicles through the Preserve and that he submit a mining plan before beginning operations" and stating that Congress's power to regulate within national parks "applies with equal force to regulating an established right of way within the park"); *School Bd. of Avoyelles Parish v. U.S. Dep't of Interior*, 647 F.3d 570, 581 (5th Cir. 2011) ("[I]mposing restrictions on entry and use, even by easement holders, is well within Congress's powers under the Property Clause of the Constitution."); *United States v. Jenks*, 22 F.3d 1513, 1518 (10th Cir. 1994) (holding that under "basic

---

[8] Congress's power under the Property Clause extends to the regulation of conduct off public land that would threaten the designated purpose of federal lands.  *See Minnesota v. Block*, 660 F.2d 1240, 1249 (8th Cir. 1981), *accord United States v. Lindsey*, 595 F.2d 5, 6 (9th Cir. 1979) ("It is well established that this clause grants to the United States power to regulate conduct on non-federal land when reasonably necessary to protect adjacent federal property or navigable waters.").

principles of property law," easement rights are subject to regulation by a federal agency as the owner of the servient estate); *City of Baker City v. United States*, No. 08-717-SU, 2011 U.S. Dist. LEXIS 105915 at *3 (D. Or. Sept. 18, 2011) (holding that access rights to Baker City's water pipeline easements over federal lands were subject to reasonable regulations).

Thus, even if Tombstone did hold all of its claimed title, it would still be subject to reasonable regulation by the Forest Service—including the need to obtain work authorizations or permits to conduct large-scale ground-disturbing activities within the Federal Wilderness Area.   The putative rights and obligations of the parties, as respective owners of the servient and dominant estates, would remain interrelated, and a system of coordination—such as the system for seeking and receiving Forest Service approval of large-scale mechanized projects in the Wilderness and other Federal lands—must be followed to protect the parties' respective rights.

Moreover, any argument based on so-called "commandeering" of state officials or resources to enact Federal law clearly fails to support any claim for relief.  *See* Dkt. No. 32 at 4.  The present situation does not fit within the *Printz/New York* line of Tenth Amendment precedent because Tombstone is not being forced to either enact or enforce federal law.  *See Printz v. United States*, 521 U.S. 898, 933 (1997); *New York*, 505 U.S. at 161; *cf. Nuclear Energy Inst., Inc. v. Envtl. Prot. Agency*, 373 F.3d 1251, 1306 (D.C. Cir. 2004) (finding that "while the designation of Yucca as a repository [for nuclear waste] may impose a burden on Nevada, it does not infringe upon state sovereign interests of the limited type protected by the Tenth Amendment").  Rather, the City is required simply to comply with federal law, as enforced by the United States

Forest Service. *See South Carolina v. Baker*, 485 U.S. 505, 514 (1988) (federal statute requiring states to issue bonds in registered form did not violate Tenth Amendment because it regulated the State's activities and did not "seek to control or influence the manner in which States regulate private parties"); *Reno v. Condon*, 528 U.S. 141, 151 (2000) (no Tenth Amendment violation for federal law limiting disclosure of drivers' personal information even though law required time and effort on the part of state employees, because it did not require states to enact any laws or regulations to assist in the enforcement of the federal statute); *Seattle Audubon v. Sutherland*, No. CV06-1608MJP, 2007 WL 1300964, at *14 (W.D. Wash. May 1, 2007) (citing *New York*, 505 U.S. at 179) (finding that "[t]he Tenth Amendment does not bar a federal court from ordering state officials to comply with federal law"). The Supreme Court has expressly recognized that the type of "commandeering" alleged by Tombstone here, is "an inevitable consequence of regulating a state activity [because] [a]ny federal regulation demands compliance." *Reno*, 528 U.S. at 151. "That a State wishing to engage in certain activity must take administrative and sometimes legislative action to comply with federal standards regulating that activity is a commonplace that presents no constitutional defect." *Id.* (quoting *South Carolina*, 485 U.S. at 514-15).

Tombstone has no cognizable legal theory to support its Tenth Amendment claim, and this Court should dismiss Count V pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### E.   This Court Has No Jurisdiction Over Water Rights Claims

As this Court has already rightfully recognized, it lacks jurisdiction to adjudicate any claimed water rights. Order, Dkt. No. 58 at 11. Therefore, to the extent that

Tombstone may seek through its amended complaint to adjudicate any water rights, these claims must be dismissed. *See* Am. Compl. at 64 (seeking, among other things, to "restore full rightful beneficial use of its water rights using necessary equipment").[9]

To the extent Tombstone must first adjudicate its claimed water rights before seeking to quiet title to any property interests appurtenant to those rights, Tombstone must do so through the Arizona state court adjudication for the Gila River and its tributary watersheds. Notably, Tombstone is apparently participating in this adjudication, but only concerning 5 of the 25 water sources now claimed. Tombstone submitted official documents to the State of Arizona declaring that its only water sources consist entirely of five springs, each of which is covered by the 1962 special use permit - Miller, Gardner, Carr, Clark and Rock springs. Dkt. 54, CSOF ¶ 71, McKay Decl. Ex. 20 at 2 (Tombstone Statement of Claimant) (requesting "all other sources of water supply not described in Question 6 of the form" and Tombstone responding as, in addition to Gardiner [sic] Spring, "[f]our other springs & 3 deep wells"). The other 20 sources now claimed are not mentioned.

---

[9] Tombstone may also be barred and estopped from asserting any rights to the use of water for the other 20 of its 25 claims if it has failed to file a statement of claim or a statement of claimant in the state court adjudication for those sources. *See* Ariz. Rev. Stat. Ann. § 45-184 (2012) ("Any person who is claiming the right to divert or withdraw public waters of the state based on state law and who fails to file a statement of claim as provided in this article shall have waived and relinquished any right, title or interest in that right."); Ariz. Rev. Stat. Ann. § 45-254(F) (2012) ("On entry of the final decree . . . any potential claimant who is properly served and who failed to file a statement of claimant as prescribed by this article for any water right or whose motion for permissive intervention was finally denied by the court is barred and estopped from subsequently asserting any right that was previously acquired on the river system and source and that was not included in a statement of claimant and forfeits any rights to the use of water in the river system and source that were not included in a properly filed statement of claimant."); Dkt. 54, CSOF ¶ 71, McKay Decl. Ex. 20 (Tombstone's Statement of Claimant identifying only 5 of 25 sources).

**F.**    **Tombstone Has Failed to State a Claim for Road Rights-of-Way**

Tombstone also asserts claims to "public highway" rights-of-way in its amended complaint.  *See* Am. Compl. ¶ 127.  However, Tombstone has pled no facts to support such claims, which are governed solely by the now-repealed Revised Statute 2477.  43 U.S.C. § 932.  In order to support such claims, and to raise the right to relief at least to a plausible level, Tombstone must plead facts illustrating the establishment of "public highways" pursuant to Arizona state or territorial law.  *Lyon v. Gila River Indian Cnty.*, 626 F.3d 1059, 1077-78 (9th Cir. 2010); *Tucson Consol. Copper Co. v. Reese*, 100 P. 777, 778-79 (Ariz. 1909).  Tombstone has not pled any facts to support a claim that the City of Tombstone (or any other political subdivision with the authority to declare public highways) has taken any actions in compliance with Arizona law to establish these claimed public highway rights-of-way.  Accordingly, any claims as to "public highways" must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**G.**    **There is No Claim for Prescriptive Easements Against the United States**

Finally, the Court also lacks jurisdiction for any claims based on prescriptive easements.  *See* Am. Compl. ¶ 132.  Prescription is not available against the United States.  28 U.S.C. § 2409a(n) ("Nothing in this section shall be construed to permit suits against the United States based upon adverse possession"); *see United States v. Vasarajs*, 908 F.2d 443, 446 n.3 (9th Cir. 1990) ("[E]ven if [defendant] could prove that the arcane time and use requirements of a prescriptive easement were fulfilled, *see* R. Cunningham, W. Stoebuck & D. Whitman, The Law of Property ch. 8, § 8.7 (1984), [defendant] would face the traditional bar that 'prescriptive rights cannot be obtained against the federal government.'") (*citing United States v. 1,629.6 Acres of Land*, 503

34

F.2d 764, 767 (3d Cir. 1974).   Beyond this absolute bar to the claim, Tombstone nevertheless also failed to allege any specific facts to support any claim to prescriptive easements. *See Tumacacori Mission Land Dev., Ltd. v. Union Pacific R. Co.*, 263 P.3d 649, 651 (Ariz. Ct. App. 2011) (establishing claim of prescription requires (1) actual and visible use of the property for ten years, (2) the use began and continued under a claim of right, and (3) the use was hostile to the title of the true owner).   Tombstone's prescription theory should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## V.   CONCLUSION

For all of the above reasons, the Court should grant Defendants' motion to dismiss Plaintiff's amended complaint.

Respectfully submitted this 30th day of May, 2012.

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Joanna K. Brinkman*
JOANNA K. BRINKMAN
Trial Attorney, U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section


ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

*s/ Charles A. Davis*
CHARLES A. DAVIS
Assistant U.S. Attorney

Copy of the foregoing served
electronically or by other means
this 30th day of May, 2012, to:

P. Randall Bays, Esq.
Bays Law, P.C.
100 S. 7th Street
Sierra Vista, AZ 85635

Robert F. Palmquist, Esq.
Strickland & Strickland, P.C.
4400 E. Broadway Blvd., Suite 700
Tucson, AZ 85711-3517
Attorneys for the Plaintiff

Richard W. Goeken
Smith Currie & Hancock, LLP
1025 Connecticut Ave., Suite 600
Washington, DC 20036

Christina Sandefur
Nicholas C. Dranais
Goldwater Institute
500 E. Coronado Rd.
Phoenix, AZ 85004

*/s/ Mary McClain*